## 56310. WAUGH *v*. GEORGIA REAL ESTATE COMMISSION.

McMURRAY, Judge.

Fred Waugh is a licensed real estate salesman who was employed by Dunlap & Associates, Mr. Ed Dunlap, broker, in August of 1976. Dunlap & Associates had listed for sale the home of Mr. and Mrs. John McDonald, located in Raintree West subdivision, Hall County, Georgia. Mr. and Mrs. Harold Simmons became interested in purchasing the McDonald property and contacted Mr. Waugh, the salesman. They expressed a desire to purchase the property provided they could be assured of a sale of their present home located at 612 Ridge Wood Terrace, Gainesville, Georgia. Mr. Waugh contacted the broker (Ed Dunlap) who agreed to list the Gainesville property for the Simmons. A contract form was executed between the broker, Ed Dunlap & Associates and Mr. and Mrs. Simmons on August 4, 1976, for $43,850, "Purchaser to pay cash down to existing loan. Subject to Purchaser getting loan." The contract recited that the purchaser had

paid the broker $1,000 by check. This contract was never executed by the sellers, Mr. and Mrs. McDonald, nor did Mr. and Mrs. Simmons ever pay or advance the $1,000 check as earnest money, telling Mr. Waugh they would wait until they got a loan. On August 6, Mr. and Mrs. Simmons executed an exclusive contract form of Dunlap & Associates, giving an exclusive right and authority to sell the property of Mr. and Mrs. Harold Simmons at 612 Ridge Wood Terrace, Gainesville, Georgia, for a period of 90 days for the sum of $27,750. This exclusive contract stated "Dunlap & Associates to net owner $26,000. In the event the house has not sold in 90 das. listing firm will purchase at that figure from present owners." This exclusive listing was signed only by Harold Simmons.

The McDonalds never executed the sales contract, having moved to Florida, and apparently General Motors Corporation took over the ownership of the McDonald property. On the 25th of August, 1976, a contract was prepared by General Motors Corporation for the sale of the property to Mr. and Mrs. Simmons, who had originally executed the contract form, dated August 4, 1976, to be presented to Mr. and Mrs. McDonald. The purchase price was $43,850. This contract recited that $1,000 in cash, or cashier's or certified check, "on the execution by the Purchaser of this Agreement, as a deposit to be held in escrow by Dunlap & Associates pending completion of this transaction but subject to the provisions of the Agreement, and at completion of this transaction to be delivered to the Seller as a part of the purchase price. The full purchase price shall be paid to Seller at the time of closing of title." However, the record fails to reflect with any degree of certainty that this contract was ever executed by the purchasers, Mr. and Mrs. Simmons.

A sale of the McDonald property (now property of General Motors Corporation) was subsequently held in Atlanta, at which time it was sold to the Simmonses who paid the full purchase price, including the $1,000 deposit paid by separate cashier's check. There is some doubt as to whether a completed contract was ever executed by and between the purchasers (Mr. and Mrs. Simmons) and General Motors Corporation. The only information relative to whether a completed contract was ever signed

before closing was provided by Mr. Waugh who stated "Well, I don't know. If that's not signed there—there would have to be one signed by Title Trust, by GMAC, yes, which I don't have any copies of." But it is apparent that if a contract was signed it was signed at the closing whereby the full purchase price including a separate cashier's check was paid.

The Gainesville property owned by Mr. and Mrs. Simmons was not sold by Dunlap & Associates during the listing period, and when Mr. Dunlap was called upon to purchase it, he refused, telling Mr. Waugh he did not understand that he was to purchase the property if it was not sold during the listing period. Whereupon after much haggling and hassling Mr. Waugh offered to purchase the Gainesville property. On December 28, 1976, he executed a contract for $26,000 through Dunlap & Associates as broker, putting up a $200 check as earnest money, the purchase to be paid "Cash at closing secured by a VA loan." This contract was fully executed by Mr. Waugh as purchaser and Mr. and Mrs. Simmons as sellers and Ed Dunlap as broker. Mr. Waugh did not include a clause in the contract disclosing that he was a real estate salesman, but of course, Mr. and Mrs. Simmons had been dealing with him for months as a salesman and were fully aware that he was a salesman for Dunlap & Associates.

A VA appraisal was obtained on the property. However, Mr. Waugh already owned a home, his credit was excellent, and the VA would make the loan provided he had a lease showing that he was leasing his home, "the present house that you are living in." Mr. Waugh refused to purchase with a VA loan since he did not realize he had to lease his own home and live in the Gainesville property he intended to purchase.

Whereupon, Mr. and Mrs. Simmons complained to the Georgia Real Estate Commission. Mr. Waugh and Mr. Dunlap were investigated and charged with various violations by the Georgia Real Estate Commission. We are concerned here only with the hearing as to Mr. Waugh. An initial decision was made by a hearing officer generally finding the facts above to be true. The respondent (Mr. Waugh) was charged with violating Code Ann. § 84-1421 (21) (Ga. L. 1973, pp. 100, 117; 1974, pp.

379, 381; and again amended in 1977, pp. 691, 692, effective March 23, 1977) in making "any substantial misrepresentations." The hearing officer concluded as a matter of law that the respondent could have violated this statute "by representing to the Simmonses in the listing contract that Dunlap & Associates would purchase the property when he had no such authority from his broker," and if he accepted and presented to the owners of the Gainesville property, "a contract which falsely provided that the broker had received a $1000 earnest money deposit." The hearing officer elected to determine that the salesman had the requisite authority from his broker to tell Mr. and Mrs. Simmons that the broker would purchase their property if it was not sold in 90 days (even though Mr. Dunlap later denied that he had authorized such a provision). However, the hearing officer concluded as a matter of law that *the respondent had presented to the owners* of the Gainesville property a contract reciting, "that a $1000 earnest money deposit had been received from the purchasers when in fact the same was untrue," and that this constituted a violation of Code Ann. § 84-1421 (21), supra.

The respondent was also charged with violating Rule 520-1-.08, Official Compilation, Rules and Regulations of the State of Georgia of the Georgia Real Estate Commission which provides that "[n]o broker or salesman shall buy or lease, nor take an option to buy or lease, any interest in property listed with him, or on which he has been requested to act as a broker, unless he shall clearly *disclose his position as a buyer* rather than a broker to the seller and insert a clause to this effect in the contract." (Emphasis supplied.) As to this violation the hearing officer concluded that this was a technical violation since the contract did not contain a provision identifying the respondent (Mr. Waugh) as a real estate salesman when he executed the contract to buy the property of Mr. and Mrs. Simmons but they were well aware that he was a real estate salesman employed by Dunlap & Associates.

The respondent was likewise charged with violating Code Ann. § 84-1421 (25), supra, "having demonstrated unworthiness or incompetency to act as a real estate. . . salesman. . ." The hearing officer determined that he had

not violated same. The Georgia Real Estate Commission adopted the findings of fact and conclusions of law of the hearing officer and suspended Mr. Waugh's real estate salesman's license for one year. The commission further ordered Mr. Waugh "to comply promptly with the provisions of Rule 520-1-.12, Official Compilation, Rules and Regulations of the State of Georgia." Mr. Waugh appealed to the superior court requesting a review and reversal of the decision of the commission and for the grant of a stay of enforcement of same. The stay was granted but on review the findings of fact and conclusions of law of the Commission were affirmed. Mr. Waugh appeals. *Held:*

1. In reviewing the decision of administrative boards the standard to be applied is the any evidence rule. *Flowers v. Ga. Real Estate Comm.,* 141 Ga. App. 105 (232 SE2d 586); *Ga. Dept. of Human Resources v. Holland,* 133 Ga. App. 616 (211 SE2d 635).

2. The hearing officer determined that the evidence was uncontradicted that Mr. Waugh had presented a contract *to the owners of the Gainesville property* which recited that a $1,000 earnest money deposit had been received from the purchasers when in fact the same was untrue. There appear to be two contracts drawn with reference to the Gainesville property. The evidence fails to disclose that the first contract to Mr. and Mrs. McDonald as owners was ever presented to them so as to result in a misrepresentation. The hearing officer concluded that the petition of Mr. Waugh admitted that he presented this contract to the owners. Mr. Waugh admitted that he did not receive $1,000 at the time the contract was drawn up but he did not admit that he ever presented this contract to Mr. and Mrs. McDonald. In regards to this question the hearing officer asked him after it was signed, "and then what happened to the contract?" The answer, "I just surmised that it was forwarded to either Detroit or to Atlanta." The hearing officer, "To GMAC?" "Yes, they took over and they were real sticky about wanting to close it themselves, their own papers. . ." As to the real owner of the Gainesville property, which was General Motors Corporation, the contract as prepared on its own form merely states that

$1,000 in cash, lawful money, cashier's check or certified check was to be deposited and held in escrow by Dunlap & Associates "on the execution by the Purchaser of this Agreement." There is no testimony whatsoever that this agreement was executed prior to the sale of the property at the final closing if in fact it was signed at that time. Of course, at that time all parties admit a cashier's check had been prepared for $1,000 separate and apart from the other funds. The evidence was insufficient to support a finding that Mr. Waugh had misrepresented the receipt of $1,000 to General Motors Corporation. There was evidence presented as to an incomplete contract to the McDonalds implying that the real estate broker was holding $1,000. But there exists a mere inference that same was ever forwarded to General Motors Corporation in a question asked of Mr. Waugh who answered that he "surmised that it was forwarded to either Detroit or to Atlanta." Nor can it be said that the initials GMAC in any respect refers to General Motors Corporation.

3. In the execution of the contract in which Mr. Waugh signed it as buyer he did not violate Rule 520-1-.08 which clearly states that "he shall clearly disclose his position as a buyer rather than a broker. . ." The contract itself was signed by him as "purchaser." The word "purchaser" is synonymous with the word "buyer," hence, it cannot be said that he violated this rule.

4. Based upon the evidence the superior court erred in failing to reverse the Commission's finding that Mr. Waugh had made a substantial misrepresentation and in violating Rule 520-1-.08. Consequently, enumerations of error 1 and 3 are therefore meritorious. No ruling is therefore necessary as to enumerations of error 2 and 4 with reference to the Commission exceeding its authority as to a technical violation of Rule 520-1-.08 and the alleged unlawful procedure in that the hearing officer erroneously advised the appellant (Mr. Waugh) that he had the burden of proof.

*Judgment reversed. Quillian, P. J., and Webb, J., concur.*

ARGUED SEPTEMBER 5, 1978 — DECIDED NOVEMBER 20, 1978.

Robinson, Harben, Armstrong & Millikan, Frank W. Armstrong, for appellant.

Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Staff Assistant Attorney General, for appellee.